**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY,<br>Plaintiff,<br><br>vs.<br><br>STUART H. SOJCHER, ESQ., AND<br>FIDELITY NATIONAL TITLE<br>INSURANCE COMPANY OF NEW YORK<br>Defendants. | ) | Civil Action No. 07-CV-11598-RGS |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND TO RESCIND INSURANCE POLICY**

Plaintiff Continental Casualty Company ("Continental"), for its First Amended Complaint for Declaratory Judgment and to Rescind Insurance Policy (the "Complaint"), alleges on knowledge, information and belief:

## NATURE OF ACTION

1. Continental files this action to obtain a judicial determination and declaration as to the parties' rights and obligations under Lawyers' Professional Liability Policy No. LAW-268022438 issued by Continental to Stuart H. Sojcher ("Sojcher"), for the policy period August 1, 2005 to August 1, 2006 (the "Policy"). A true and correct copy of the Policy, without the application, is attached hereto as Exhibit A.

2. An actual and justiciable controversy has arisen and now exists relating to the parties' rights, duties, and obligations under the Policy. In particular, Continental seeks a declaratory judgment that it is entitled to rescind the Policy because of one or more material misrepresentations in the application for the Policy, submitted by Sojcher. Alternatively,

Continental seeks a declaratory judgment that there is neither coverage for, nor a duty to defend Sojcher in connection with, the claims asserted against him in the lawsuit captioned *Fidelity National Title Insurance Co. v. Sojcher*, Case No. 08-3743, in the Superior Court for Suffolk County, Massachusetts (the "Fidelity Lawsuit"). A true and correct copy of the Complaint filed in the Fidelity Lawsuit (the "Fidelity Complaint") is attached hereto as Exhibit B.

## PARTIES

3. Plaintiff Continental is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located in Chicago, Illinois. Continental legally transacts insurance business in the Commonwealth of Massachusetts and within the geographical jurisdiction of the United States District Court for the District of Massachusetts.

4. Defendant Stuart H. Sojcher ("Sojcher") is a citizen of the Commonwealth of Massachusetts and, upon information and belief, currently resides in Winchester, Massachusetts.

5. Defendant Fidelity National Title Insurance Company of New York ("Fidelity") is a New York corporation, with its principal place of business at 601 Riverside Avenue, Jacksonville, Florida. Fidelity is joined as a defendant in this action because it seeks a judgment against Sojcher, for which coverage has been requested under the Policy.

## JURISDICTION AND VENUE

6. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rules of Civil Procedure Rule 57, for the purposes of determining a question of actual controversy between the parties as hereinafter more fully appears.

7. This action is currently ripe for adjudication.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the controversy is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL BACKGROUND

### Sojcher and His Law Practice

10. Prior to his suspension and disbarment, Sojcher was a Boston, Massachusetts attorney, whose practice included real estate law.

11. As a former real estate attorney and title insurance issuing agent, Sojcher has at all relevant times been familiar with Massachusetts real estate law, including but not limited to the local standards of care regarding title searches for encumbrances on properties prior to closing, ensuring that prior, existing mortgages and encumbrances are paid off or otherwise satisfied and discharged at closing, and ensuring that mortgages are recorded promptly following closing.

### The Fidelity Lawsuit

12. On or around November 3, 2008, through counsel, Sojcher first provided notice of the Fidelity Lawsuit to Continental.

13. In its Lawsuit, Fidelity alleges that Sojcher made several misrepresentations regarding the status of title to Steven A. Ross (“Ross”), who with his firm, Gilmartin, Magence & Ross, LLP, was a title issuing agent of Fidelity, a title insurer.

14. Fidelity claims that Ross relied on title reports that Sojcher prepared when Ross closed and issued title policies for certain loan transactions, specifically: (i) a March 21, 2005 loan to City-Scapes, LP from Charles J. Houseman, Trustee of Pine Banks Nominee Trust (“Pine

Banks") secured by property located at 312-320 West Third Street, Unit 304, Boston; (ii) a March 4, 2004 loan to Bernard J. Laverty, Jr. ("Laverty"), as Trustee of the BJL Realty Trust ("BJL") from Pine Banks secured by property located at 111 West Eighth Street, Unit G, South Boston; (iii) a November 13, 2003 loan to Foundry Realty LLC from Pine Banks secured by property located at 314-330 West Second Street, Unit C-1, South Boston; (iv) a November 21, 2003 loan to Laverty from Pine Banks to be secured by properties located at 1736 Liberty Street, Unit F, Braintree and 130 Pokanoket Lane, Marshfield; and (v) an August 25, 2005 loan from GMCR Lending Trust to Laverty, as Trustee of B&S Realty Trust, secured by property located at 153 Rowe Street, Rosindale.

15. In each case, the title reports allegedly failed to disclose senior encumbrances on the properties, and as such, the lenders were not in the lien positions ensured them by the title policies, resulting in claims and losses to Fidelity arising out of policies issued by Ross, allegedly based on title reports prepared by Sojcher.

16. By letter dated June 26, 2006, Fidelity's agent, Ross, wrote to Sojcher outlining actions that Sojcher needed to undertake in order to resolve certain title problems. Sojcher countersigned the June 26, 2006 letter indicating that he "acknowledged and agreed" that he made misrepresentations regarding title. A copy of this letter is attached as Exhibit B to the Fidelity Lawsuit.

17. Fidelity asserts a single cause of action against Sojcher, for negligent misrepresentation. However, Fidelity alleges that "Sojcher knew or should have known that his title reports to Ross were false and/or wrong" and asserts that Sojcher's misrepresentations were "negligent[] and/or intentional[]."

18. As damages in its Lawsuit, Fidelity seeks the amount that it allegedly paid to resolve claims arising out of Unit 304 and Unit G, totaling $512,500, and damages that it has yet to incur arising out of title problems with the other loans, plus attorneys fees, costs, and interest.

## The Policy

19. Continental issued the Policy, which is a claims-made-and-reported policy, to Stuart H. Sojcher for the policy period August 1, 2005 to August 1, 2006.

20. The Policy provides for a $3,000,000 per-claim and maximum aggregate limit of liability, inclusive of claims expenses, for all covered claims under the Policy. *See* Ex. A, Policy, Declarations, Item 3. Any coverage provided by the Policy is subject to satisfaction of a $2,500 aggregate deductible, which is inclusive of claims expenses. *See id.*, Declarations, Item 4.

21. With respect to the scope of coverage available, the Insuring Agreement of the Policy provides as follows:

> I. INSURING AGREEMENT
>
> A. Coverage
>
> The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against the **Insured** and reported in writing to the **Company** during the **policy period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:
>
> 1. the **Insured** did not give notice to a prior insurer of such **claim** or a **related claim**;
> 2. the **Insured** did not give notice to a **prior insurer** of any such act or omission or **related act or omission**;
> 3. there is no other policy whether primary, contributory, excess, contingent, or otherwise, which provides insurance to any **Insured** for the **claim** based on or arising out of an act or omission in the performance of **legal services** by such **Insured** or by any person

for whom the **Insured** is legally liable while affiliated with a firm other than the **Named Insured**.

B. Defense

The **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured's** behalf a **claim** covered by this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **claim** as is deemed necessary by the **Company**. If a **claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

If the **Company** agrees to defend a **claim** but reserves its rights to deny coverage on grounds which create a conflict of interest between an **Insured** and the **Company**, and the **Insured** does not waive the conflict then the **Insured** may select independent counsel. Such counsel shall have at least five (5) years of experience in the defense of similar claims, and have in place error and omissions insurance. The **Insured** and independence counsel shall provide full information, documentation and cooperation with respect to the defense, investigation, and settlement of any **Claim**. The **Company** shall be liable only for reasonable and necessary **claim expenses** at rates customarily paid by the **Company** for the defense of similar **claims** in the area where the **claim** is being defended.

*Id.*, I.A. and B. Words in bold type are defined terms in the Policy.

22. The Policy defines "claim" to mean "a demand, including the service or suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services arising out of an act or omission, including **personal injury**, in the rendering or failure to render **professional services**." Policy, Definitions, § III.B.

23. Section V.A.1, "Notice of claims and potential claims" provides, in relevant part, as follows:

A. Notice of **claims** and potential **claims**

> 1. The **Insured**, as a condition precedent to the obligations of the **Company** under this **Policy**, shall *as soon as reasonably possible give written notice to the **Company*** during the **policy period**;
>    a. of any **claim** made against the Insured;
>    b. of the **Insured's** receipt of any notice, advice or threat, whether written or verbal, that any person or organization intends to hold the **Insured** responsible for any alleged breach of duty.
>
>    The **Company** agrees that the **Insured** may have up to, but not to exceed, 60 days after the Policy expiration to report a **claim** made against the **Insured** during the **policy period** if the reporting of such claim is as soon as reasonably possible.

Policy, §V.A.1 (italic emphasis added).

24. In Section IV.A., the Policy states, in relevant part: "This Policy does not apply to any **claim** based on or arising out of any dishonest fraudulent, criminal, or malicious act by the **Insured** . . . ." Policy, §IV.A.

25. Section V.L. of the Policy, "Entire Contract" provides, in relevant part:

> By acceptance of this Policy, the **Insured** agrees that:
> 1. all of the information and statements provided to the **Company** by the **Insured** are true, accurate and complete and shall be deemed to constitute material representations made by all the **Insureds**;
> 2. this Policy is issued in reliance upon the **Insured's** representations; and
> 3. this Policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to the **Company** (all of which are deemed to be incorporated herein) embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**.
>
> No oral or written misrepresentations made in the negotiation of this Policy of insurance by the **Insured** or in his or her behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss. Notwithstanding the foregoing, this policy will be null and void only with respect to those **Insureds** who participate in, or who have knowledge of, or who should have knowledge of, the misrepresentation of any material matter in the negotiation of the Policy or application.

*Id.*, § V.L. (italic emphasis added).

**Misrepresentations in the Application**

26. In order to obtain the Policy, Sojcher submitted a "Renewal Application for MBA Lawyers Professional Liability Insurance Claims Made Basis," which he signed on June 7, 2005 (the "Application"). A true and correct copy of the Application is attached hereto as Exhibit C.

27. Sojcher responded in the negative to Question 3(a) on the Application, which asked:

> a) Is the firm, or any attorney affiliated with the firm, aware of any acts, omissions, or circumstance which a reasonable person would expect may give rise to a professional liability claim in the future against the firm, any predecessor firm, or any current or former attorney of the firm while affiliated with the firm, which has not been reported to [Continental]?

28. The Application includes the following warranty language directly above Sojcher's signature:

> Applicant affirms that the responses herein shall attach to and become an integral part of the application for insurance.
>
> * * *
>
> Applicant warrants . . . that after full investigation and inquiry, the information contained herein and in any supplemental applications or forms required hereby is true, accurate and complete and that no material facts have been suppressed or misstated.
>
> * * *
>
> Applicant further warrants . . . that after investigation and inquiry (1) there are no known claims by reason of an act or omission or related acts or omissions in the rendering of legal services by the Applicant . . . prior to the effective date of this policy; and (2) [the] applicant . . . . [is] not aware of any act or omission or related acts or omissions in the rendering of legal services which a reasonable person would view as likely to give rise to a claim in the future.
>
> * * *
>
> Further, Applicant . . . acknowledge[s] that:
>
> * * *
>
> Applicant's failure to report to its current insurance company during the current policy term any claim made against it . . . and any act, omission or circumstance which may give rise to a claim in the future against it . . . may create a lack of coverage.

29. Prior to submitting the Application to Continental, Sojcher had participated in certain intentional conduct that he knew or reasonably should have known would lead to a claim against him. Specifically, prior to submitting the Application to Continental, Sojcher:
(a) participated in a "sham" transaction designed to induce a federally-insured lender to make a multi-million dollar loan; (b) notarized signatures outside the signatories' physical presence, including signatures he knew to be forgeries; (c) closed at least one transaction knowing that he had not obtained, and did not intend to obtain, discharges of prior liens not listed as exceptions in the title insurance policy he issued; and (d) engaged in other deliberate and intentional conduct outside the standard of care for an attorney.

30. Sojcher has asserted his Fifth Amendment privilege against self-incrimination in response to discovery requests served by Continental in this case.

31. Sojcher was subjectively aware, before the Application was signed, of acts, omissions, or circumstances that a reasonable attorney would expect may give rise to a claim against him.

**COUNT I**
**<u>For Declaratory Relief that Continental is Entitled to Rescind the Policy</u>**

32. Continental realleges and incorporates by reference herein the allegations of Paragraphs 1-31 of this Complaint.

33. As set forth above, on June 7, 2005, Sojcher answered "No" in response to Application Question 3(a), which asked:

> a) Is the firm, or any attorney affiliated with the firm, aware of any acts, omissions, or circumstance which a reasonable person would expect may give rise to a professional liability claim in the future against the firm, any predecessor firm, or any current or former attorney of the firm while affiliated with the firm, which has not been reported to [Continental]?

34. As set forth above, the Application and the answers thereto are made a part of the Policy by Section V.L, Entire Contract.

35. For the reasons cited above, Sojcher was subjectively aware, before the Application was signed, of acts, omissions, or circumstances that a reasonable attorney would expect may give rise to a claim against him.

36. Accordingly, by providing a negative answer to Application Question 3(a), Sojcher made a misrepresentation to Continental.

37. Continental reasonably relied on the truthfulness of the answers in the Application in order to determine Continental's risk.

38. Sojcher's misrepresentation(s) materially affected the risk and the hazard assumed by Continental.

39. Based on the foregoing, Continental seeks a judgment in this action declaring that Continental is entitled to rescind the Policy and that the Policy is void and therefore does not provide coverage for the claims made against Sojcher, including those asserted in the Fidelity Lawsuit.

40. Continental hereby tenders a refund of the premium paid for the Policy.

**COUNT II**
**For Declaratory Judgment that Coverage is Barred or Limited on the Basis of Other Policy Provisions**

41. Continental realleges and incorporates by reference herein the allegations of Paragraphs 1-31 of this Complaint.

42. Coverage is not available for the Fidelity Lawsuit because the claims asserted in the Fidelity Lawsuit were not "both first made against the Insured and reported in writing to the Company during the policy period . . . ." Policy, § I.A.

43. Coverage is not available, in whole or in part, for the claims made in the Fidelity Lawsuit on the basis of other provisions in the Policy § I.A. *Id.*

44. Coverage is not available, in whole or in part, on the basis of Policy Exclusion A, which states, in pertinent part: "This Policy does not apply to any **claim** based on or arising out of any dishonest, fraudulent, criminal, or malicious act by the **Insured** . . . ." *Id.*, §IV.A.

45. Coverage is not available, in whole or in part, because Sojcher has not provided prompt and proper notice of the Fidelity claim pursuant to Policy Condition A, which states:

> A. Notice of **claims** and potential **claims**
>
> 1. The **Insured**, as a condition precedent to the obligations of the **Company**, under this Policy, shall as soon as reasonably possible give written notice to the **Company** during the **policy period**:
>    a. of any **claim** made against the **Insured**;
>    b. of the **Insured's** receipt of any notice, advice or threat, whether written or verbal, that any person or organization intends to hold the **Insured** responsible for any alleged breach of duty.
>
>    The **Company** agrees that the **Insured** may have up to, but not to exceed, 60 days after the Policy expiration to report a **claim** made against the **Insured** during the **policy period** if the reporting of such **claim** is as soon as reasonably possible.
> 2. If during the **policy period** the **Insured** shall become aware of any act or omission that may reasonably be expected to be the basis of a **claim** against the **Insured** and gives written notice to the **Company** of such act or omission and the reasons for anticipating a **claim**, with full particulars, including but not limited to:
>    a. the specific act or omission;
>    b. the dates and persons involved;
>    c. the identity of anticipated or possible claimants;
>    d. the circumstances by which the **Insured** first became aware of the possible **claim**,
>
>    then any such **claim** that is subsequently made against the **Insured** and reported to the **Company** shall be deemed to have been made at the time such written notice was given to the **Company**.

46. In connection with the Fidelity claim, Continental has reserved its rights generally and on the bases referenced above. Continental continues to reserve its rights to assert any such

additional limitations or exclusions as appropriate. Moreover, based on the foregoing, Continental seeks a judgment in this action declaring that the Policy provides no coverage for some or all of the claims made the Fidelity Lawsuit, and that Continental has no duty to defend or indemnify Sojcher in connection with this Lawsuit.

WHEREFORE, Plaintiff respectfully requests that this Court:

(A) enter judgment declaring that Continental is entitled to rescind the Policy, as that the Policy is void *ab initio*, and that as a result the Policy does not provide coverage for any claim made against Sojcher, including without limitation the Fidelity Lawsuit;

(B) in the alternative, enter judgment declaring that the Policy does not provide coverage for the Fidelity Lawsuit and that Plaintiff has no obligation under the Policy to defend or indemnify Sojcher;

(C) enter judgment declaring that Continental may withdraw the defense that it provided to Sojcher in the Fidelity Lawsuit;

(D) award Continental its costs incurred herein; and

(E) award Continental all other relief to which it may be entitled.

Respectfully submitted,

Dated: March 20, 2009 By: /s/ William L. Boesch

*Counsel for Plaintiff Continental Casualty Company*

Richard A. Simpson (admitted *pro hac vice*)
rsimpson@wileyrein.com
Kelly V. Overman (admitted *pro hac vice*)
koverman@wileyrein.com
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)

Regina Roman
roman@srbc.com
William L. Boesch
boesch@srbc.com
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street
Boston, MA 02114-4737
(617) 227-3030 (phone)
(617) 523-4001 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that this document is being filed through the ECF system, and that I am therefore relying on the system to complete service on the parties by sending copies of the filing electronically to the current parties' counsel, who are registered participants. Proof of service upon the new defendant will be filed in due course.

/s/ William L. Boesch

413844.1